**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| MICHAEL IAN HARTS, | * | |
| Plaintiff, | * | |
|  | * | |
| v. | * | Civil No. 22-3192-BAH |
| CALVERT COUNTY SHERIFF, ET AL. | * | |
| Defendant. | * | |
| * * * * * * * | * * * * * * | |

## MEMORANDUM OPINION

Plaintiff, Michael Ian Harts ("Plaintiff") brings the present civil rights suit against Defendants Montgomery County, Calvert County Sheriff ("CCS"), Calvert County Office of the State's Attorney ("CCSA"), Detective W. Wells ("Wells"), Robert H. Harvey ("Harvey"), Kyle B. Tores ("Tores"), and Officer(s) John Doe (collectively, the "Defendants") for federal and state constitutional violations and tortious conduct Plaintiff alleges occurred between March 2020 and January 2021. ECF 22 (Amended Complaint).

Before the Court are three pending motions to dismiss: Montgomery County's motion to dismiss for failure to state a claim, ECF 23 (hereinafter "Montgomery County's Motion"); Detective Wayne Wells' motion to dismiss or, in the alternative, for summary judgment, ECF 24 (hereinafter "Wells' Motion"); and Robert Harvey's motion to dismiss, or in the alternative, for summary judgment on behalf of Harvey, Tores, and CCSA, ECF 28 (hereinafter "Harvey's Motion"). All motions include memoranda of law and exhibits.[1] The Court has reviewed all relevant filings, including Plaintiff's response in opposition, ECF 32, and Defendants' replies,

---

[1] The Court references all filings by their respective ECF numbers.

ECFs 38, 39, 40. The Court finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). Accordingly, for the reasons stated below, Montgomery County's Motion, Wells' Motion, and Harvey's Motion are **GRANTED** in part. Plaintiff's § 1983 claims against all Defendants are **DISMISSED** and the remaining state law claims are **REMANDED.**

## I.    **BACKGROUND**

Plaintiff filed a complaint in the Circuit Court for Calvert County on October 21, 2022, alleging law enforcement officers had fabricated criminal charges against him in retaliation for his protesting activities. ECF 1 (Notice of Removal), at 1; ECF 1-1 (Civil Cover Sheet).

In March 2020, Plaintiff began protesting at the Montgomery County Police Department Headquarters after the widely publicized death of Duncan Lemp, who was killed during the execution of a no-knock warrant on March 12, 2020. ECF 22 (Amended Complaint) ¶ 5. From late March through April 2020, Plaintiff and others organized protests outside the Montgomery County Police Department, seeking the release of body worn camera footage and additional details surrounding Mr. Lemp's death. *Id.* ¶¶ 22–24. Plaintiff alleges Montgomery County Police officers initiated an investigation of Plaintiff "[i]n direct retaliation" for Plaintiff's protest activity. *Id.* ¶ 29.

On April 22, 2020, two of Plaintiff's neighbors in Calvert County received final peace orders against Plaintiff, which ultimately resulted in Plaintiff losing his employment when his employer learned of the peace orders. *Id.* ¶¶ 26–27. There is no allegation that the peace orders were connected to Plaintiff's protesting activities. *See id.* However, Plaintiff alleges that despite the peace order petitioners indicating "in open court that they would not object to Plaintiff continuing his employment" at a location near to the petitioners' home, "said petitioners left the courthouse and immediately telephoned Plaintiff's employer, causing Plaintiff's employment to be terminated." *Id.* ¶ 27. After Plaintiff vented his frustration with the peace order petitioners in

2

"colorful" social media posts, *id.* ¶ 28, Plaintiff alleges that police officers in Montgomery County

and Calvert County worked with prosecutors for Calvert County in an effort to retaliate against

Plaintiff for his protest activity by fabricating charges against Plaintiff for violation of his peace

orders. *Id.* ¶ 29. As a result of the investigation, a warrant for his arrest was issued. *Id.* ¶ 37.

Plaintiff was arrested on that warrant the morning of April 25, 2020. *Id.* Plaintiff asserts that the

"misconduct of officials from Calvert County and Montgomery County" led to this arrest and

subsequent detention, which he describes as an "assault" and "wrongful imprisonment." *Id.* ¶ 8.

Plaintiff describes the use of "flashbangs" and "the pointing of multiple firearms at him and his

vehicle" as sources of "severe and lasting damages."[2] *Id.* ¶ 101. Plaintiff claims that he suffered

extreme stress while waiting nine months for the resolution of his charges; that he was deprived

of his personal possessions for that time; that he lost time and income and suffered disparagement

of his character as a result of his ordeal. *Id.*

Defendant Wells removed the action to federal court, based upon the federal question posed

in Plaintiff's § 1983 claim. ECF 1, at 1–2. Defendants CCSA, and the Montgomery County

Department of Police, the only other Defendants served at that time, consented to removal. ECF

1 ¶ 10. The Defendants filed three separate motions to dismiss on April 17, 2023. ECFs 23, 24,

28. On December 15, 2023, the Court requested supplemental briefing from Defendant Harvey,

ECF 47, which Harvey filed on January 16, 2024. ECF 48. Plaintiff did not file a response to

---

[2] Plaintiff alleges that Wells and other Calvert County law enforcement officers comprised a "SWAT" team that executed Plaintiff's arrest. ECF 22 ¶ 43. Wells is the only Calvert County law enforcement officer that is a party to this proceeding. ECF 22, at 4–5 (listing parties); *see also id.* (noting John Doe Defendants are all Montgomery County law enforcement officers). Additionally, Plaintiff does not accuse Wells of violating the Fourth Amendment via excessive force. *See* ECF 22; ECF 32-1, at 11–14 (discussing only the warrant's compliance with the Fourth Amendment, not the manner of arrest). Rather, Plaintiff alleges that all Defendants conspired to arrange an assault against Plaintiff in violation of state law. ECF 22, at 14 (Count III).

Harvey's supplement and the time to do so has since expired.  The motions are, therefore, fully briefed and ripe for disposition.

## II.   **LEGAL STANDARD**

Under Rule 12(b)(6), dismissal is appropriate where the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In deciding a motion to dismiss, the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Washington v. Hous. Auth. of the City of Columbia*, 58 F.4th 170, 177 (4th Cir. 2023) (citing *Singer v. Reali*, 883 F.3d 425, 437 (4th Cir. 2018)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2) (noting that a complaint must contain "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief").  "The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555).  At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014) (quoting *Twombly*, 550 U.S. at 570).

The Court may consider "documents attached to the complaint, 'as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).  A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v.*

4

*Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (emphasis omitted) (citing *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)). For example, "where a complaint in a fraud action references a document containing the alleged material misrepresentations, the referenced document may be considered part of the complaint." *Walker*, 517 F. Supp. 2d at 806; *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) ("American Chiropractic explicitly referred to the [document], and its mail and wire fraud claims are based on the alleged misrepresentation made in that document."). "Similarly a newspaper article reporting allegedly fraudulent statements by a corporate officer may be considered part of the complaint in a securities fraud action,[] and an allegedly libelous magazine article referred to in a complaint may be considered part of the complaint in a libel action based on that article." *Walker*, 517 F. Supp. 2d at 806. To be clear, the parties may dispute the facts contained within the "integral" document, as was the case in each of the above listed scenarios, so long as the "authenticity of the document" is unquestioned. *Fusaro*, 930 F.3d at 248.

The Court sees a general similarity between the scenarios outlined by the *Walker* Court and the situation presented here, where Plaintiff alleges his Fourth Amendment rights were violated based on misrepresentations in an application for a search warrant. ECF 22 ¶¶ 69–72. Ultimately, Plaintiff's "claims are based on the alleged misrepresentation made in that document." *Am. Chiropractic Ass'n*, 367 F.3d at 234.[3]   Indeed, courts commonly review search or arrest

---

[3] Plaintiff alleges Wells' search warrant caused a "complete and total violation of Plaintiff's privacy" and violated Plaintiff's constitutional rights. ECF 22 ¶ 70. Though Plaintiff received a copy of the search warrant one week after the search was executed, ECF 22 ¶ 71, Plaintiff did not append a copy to Plaintiff's complaint, even though Plaintiff's claims are based upon purported misrepresentations in that document. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the defendant may produce the [document] when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure.").

warrants as "integral" to a complaint alleging such a document is constitutionally defective. *See Heller v. Hammerle*, Civ. No. 2:20-01656, 2021 WL 3426807, at *3 (W.D. Pa. June 30, 2021), *report and recommendation adopted*, Civ. No. 20-1656, 2021 WL 3419678, at *2 (W.D. Pa. Aug. 5, 2021) ("The Court concurs, as do Plaintiffs, that the Affidavit of Probable Cause and Application for Search Warrant may be properly considered under Defendants' Motion to Dismiss and without conversion to summary judgment, as those documents are integral to the Complaint and undisputed."); *Cayo v. Sefcik*, Civ. No. 14–38, 2014 WL 3419578, at *5 n. 10 (D. Conn. July 11, 2014) ("The [c]ourt can consider the contents of the [a]rrest [w]arrant [a]pplication and its attachments because they are discussed extensively in the complaint."); *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 283–84 (S.D.N.Y. 2015) (considering search warrant where no party disputes authenticity and where plaintiff alleges a Fourth Amendment violation for the issuance of a warrant lacking in probable cause). In this case the Court considers the following documents attached to Wells' Motion as integral to the complaint:[4] ECF 24-4 (application for statement of charges); ECF 24-5 (arrest warrant); ECF 24-6 (application for search warrant for Plaintiff's cell phone); and ECF 24-7 (search warrant for Plaintiff's cell phone).

Finally, when presented with a motion to dismiss or, in the alternative, a motion for summary judgement, the disposition of the motion "implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure." *Pevia v. Hogan*, 443 F. Supp. 3d 612, 625 (D. Md. 2020). In this case, both Harvey's Motion and Wells' Motion are styled as motions to dismiss

---

[4] Plaintiff at no point disputes the authenticity of the documents Wells attached to his motion. ECF 32-1, at 9–17. Plaintiff instead disputes the constitutionality of the attached documents (*i.e.*, the legal conclusion this Court should draw), by arguing that there were either fundamental falsehoods or omissions in the document that deprived the otherwise authentic warrants of probable cause. ECF 32-1, at 9–17. This underscores that the documents that contain the alleged falsehoods are "integral" and properly considered on a Rule 12(b)(6) motion.

under Rule12(b)(6) or, in the alternative, for summary judgment under Rule 56. ECF 24, 28. The Court exercises its discretion to consider both Motions as motions to dismiss under Rule 12(b)(6). *Pevia*, 443 F. Supp. 3d at 625. As such, the Court considers all three motions, ECFs 23, 24, 28, under the Rule 12(b)(6) standard.

## III.    DISCUSSION

Plaintiff alleged the following Counts in his complaint: Count I (deprivation of civil rights under 42 U.S.C. § 1983); Count II (violation of Articles 10, 23, 25, and 26 of the Maryland Declaration of Rights); Count III (assault); Count IV (false imprisonment); Count V (false arrest); Count VI (intentional infliction of emotional distress); Count VII (trespass to chattels); Count VIII (malicious prosecution); Count IX (defamation); Count X (invasion of privacy); Count XI (*respondeat superior*), Count XII (negligent training and supervision), and Count XIII (conspiracy). ECF 22 ¶¶ 85–165.[5] Plaintiff's complaint includes a request for Defendants to be held jointly and severally liable in the amount of ten million dollars in compensatory damages and twenty million dollars in punitive damages. *Id.* at 21.

The Court considers the § 1983 claims against each Defendant next and concludes that each of Plaintiff's § 1983 claims will be dismissed. *See infra* III.A. As the only remaining claims include common law and constitutional state law claims, the Court elects to remand the case to the Circuit Court for Calvert County. *See infra* III.B.

---

[5] Counts V, XI, and XII are the only counts not common to all Defendants. Count V (false arrest) is brought against all Defendants except Tores. *Id.* at 15 (indicated in the heading). Counts XI (*respondeat superior*) and XII (negligent training and supervision) are brought against the CCS, CCSA, and Montgomery County. *Id.* at 19–20.

## A.      § 1983 Claims

42 U.S.C. § 1983 provides "a method for vindicating federal rights." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). It allows suits against any "person" acting under color of state law who subjects the claimant to "the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. Claims brought under § 1983 are analyzed differently depending upon whether the plaintiff brings the claim against an individual, an entity, or a municipality.

### 1.      Plaintiff's § 1983 Claim Against Montgomery County is Dismissed.

To allege a § 1983 claim against a county, a plaintiff must allege that the action at issue was one that "executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or that represents informal governmental "custom." *See Monell v. Dept. of Soc. Servs. of N.Y.*, 436 U.S. 658, 690–91 (1978). This means that "[c]ounties and other local governments cannot be held liable under § 1983 for injuries inflicted by their employees or agents based on the theory of *respondeat superior*." *Borkowski v. Balt. Cnty.*, 414 F. Supp. 3d 788, 813 (D. Md. 2019) (emphasis added) (citing *Monell*, 436 U.S. at 694). A prerequisite to municipal liability is that a plaintiff adequately plead (1) "the existence of an official policy or custom"; (2) "that is fairly attributable to the municipality"; and (3) "that proximately caused the deprivation of their rights." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994); *see City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999); *Borkowski*, 414 F. Supp. 3d at 813.

Here, Montgomery County argues Plaintiff has failed to establish the first element—the existence of an official policy or custom. ECF 23-1, at 3. Plaintiff counters that he cannot allege

8

a policy or custom absent discovery, ECF 32-1, at 5, which Montgomery County views as no more than a "fishing expedition." ECF 38, at 2.

To be sure, a § 1983 claim against a municipality is "not subject to a heightened pleading standard paralleling the rigors of proof demanded on the merits." *Jordan by Jordan*, 15 F.3d at 338 (citations and internal quotation marks omitted). Nevertheless, to survive a motion to dismiss against a municipality on a § 1983 claim, a plaintiff must plead "the existence of an official policy or custom that is fairly attributable to the municipality" that itself proximately caused the deprivation of rights. *Id.* Here, Plaintiff does no more than allege law enforcement officers in Montgomery County violated applicable policies—not that the policies themselves were defective in some way—to bring about the violation of Plaintiff's constitutional rights. *See* ECF 22 ¶ 29–32.

The only allegations against Montgomery County include bare recitations that "upon information and belief," the conduct of various unidentified Montgomery County law enforcement officers was "in clear violation of established policies and procedures." ECF 22 ¶ 29, 32. However, this line of reasoning seeks to hold Montgomery County liable under a theory of *respondeat superior* based upon the John Doe's failure to follow applicable polices and not under a theory of *Monnell* liability, based upon a defect with the policies themselves. The Court agrees that Plaintiff has failed to adequately plead a claim for municipal liability. As such, Count I is dismissed against Montgomery County with prejudice.

2.    Plaintiff's § 1983 Claim Against Wells is Dismissed.

Plaintiff's complaint includes allegations that Wells violated Plaintiff's First, Second, Fourth, and Fourteenth Amendment rights under the federal constitution. ECF 22 ¶ 86. Wells argues Count I should be dismissed against him both because Wells asserts qualified immunity

9

and because Plaintiff has failed to state a claim for relief. ECF 24-1, at 14. For the reasons indicated below, the Court finds Wells is shielded by the doctrine of qualified immunity.

To sustain an action under § 1983, a plaintiff must demonstrate that: (1) he suffered a deprivation of "rights, privileges or immunities secured by the Constitution and laws" of the United States; and (2) the act or omission causing the deprivation was committed by a person acting under color of law. *Prigg v. Balt. Cnty. Dep't of Corr.*, Civ. No. JRR-22-3105, 2022 WL 17989640, at *2 (D. Md. Dec. 29, 2022) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

Wells asserts the affirmative defense of qualified immunity. ECF 24-1, at 14–15. "Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc) (citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). When assessing a claim of entitlement to qualified immunity, courts apply a two-part test. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Under the first prong, courts determine "whether a constitutional right would have been violated on the facts alleged," and under the second prong, whether that constitutional right was clearly established. *Saucier*, 533 U.S. at 200. As to the second prong, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the law." *Id.* at 202. "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). Though often fashioned as a test in two parts, the Court may consider either prong of the test first. *Sims v. Labowitz*, 885 F.3d 254, 260 (4th Cir. 2018); *see also Pearson*, 555 U.S. at 236 ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified

10

immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

"The Court, for the purposes of this motion, accepts that a right to be free from arrest except upon probable cause is a legally established right that any reasonable police officer is charged with knowing." *Smith v. Reddy*, 882 F. Supp. 497, 499 (D. Md. 1995), *aff'd*, 101 F.3d 351 (4th Cir. 1996). However, this is not the end of the inquiry as "the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992). "The question thus becomes whether the officer's conduct was objectively reasonable"; that is, "whether an officer, acting under the circumstances as she perceived them, reasonably could have believed that her action did not violate the constitutional rights asserted." *Smith*, 882 F. Supp. at 499 (first citing *Harlow v. Fitzgerald*, 457 U.S. at 800 (1982) then quoting *Gooden v. Howard Cnty.*, 954 F.2d 960, 965–66 (4th Cir. 1992) (en banc)); *see also Sevigny v. Dicksey*, 846 F.2d 953, 956 (4th Cir. 1988).

"The reasonableness of [law enforcement's] conduct does not turn on whether probable cause was, in fact, present." *Smith v. Reddy*, 101 F.3d 351, 356 (4th Cir. 1996) (citing *Hunter v. Bryant*, 502 U.S. 224, 226–27 (1991)). "When an officer acts pursuant to a warrant, the pertinent question is whether the officer could have reasonably thought there was probable cause to seek the warrant." *Id.*; *see also Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir. 1991). "Qualified immunity is lost only if 'the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable.'" *Smith*, 101 F.3d at 356 (quoting *Malley v. Briggs*, 475 U.S. 335, 344–45 (1986)). "In other words, an officer is not denied qualified immunity for making a mistake, as long as that mistake is reasonable under the circumstances." *Id.*

Wells' conclusion that there was probable cause to believe that Plaintiff had violated peace orders was reasonable considering the information in Wells' possession, including (1) that two final peace orders were initiated on April 22, 2019; and (2) the timing and content of Plaintiff's social media posts, as the posts were publicized two days after the peace order's initiation and the posts included heavy reliance on weapons and the direct mention of retaliating against the peace order petitioners.

To an observer like Wells, the content of Plaintiff's social media posts would be alarming. These posts included the following: "So the neighbors who filed the peace order on me just got me fired from my new job . . ." with the words "Gimme back, gimme back my bullets" written above it. ECF 24-4, at 3. Perhaps that caption—standing alone—might be written off as a confusing reference to music lyrics.[6] However, in a video posted around the same time, Plaintiff continued to spew ominous phrases: "These people cost me my job," and "These people wanna fuck with me? They wanna fuck with my livelihood? If they wanna fuck with me, I'm going to be doing some unreasonable shit." *Id.* at 3–4. Additionally, Plaintiff posted a picture of a gun and ammunition with the text "All I wanted was to be left alone" written over it. *Id.*

While Plaintiff alleges that he was only planning to retaliate by suing in a court of law, ECF 32-1, at 15 n.15, Plaintiff's subjective intentions are irrelevant to whether a reasonable police

---

[6] This phrase matches a portion of the lyrics of a 1976 Lynyrd Skynyrd song entitled "Gimme Back My Bullets," off an album of the same name, written by the late Ronnie Van Zant and Gary Rossington. *See* Lynard Skynard, Gimme Back My Bullets (MCA Records 1976). Neither party raises the argument that Plaintiff intended to invoke song lyrics. In any event, the subjective intentions of Plaintiff are irrelevant when considering whether a reasonable police officer would have concluded there was probable cause to support the arrest warrant. *See Smith v. Reddy*, 101 F.3d 351, 356 (4th Cir. 1996) ("When an officer acts pursuant to a warrant, the pertinent question is whether the officer could have reasonably thought there was probable cause to seek the warrant.").

officer would have concluded that the postings provided probable cause to support the arrest warrant. *Smith*, 882 F. Supp. at 499 (noting this is an objective inquiry). Plaintiff's use of weapons and ammunition in his posts, his direct mention of losing his job because of the petitioners, and his threat to retaliate in some form against them support a finding that a reasonable person could conclude there was probable cause that Plaintiff was threatening violent retaliation against petitioners. Even taking Plaintiff's allegations as true and accepting that Officer John Doe sent the above-described information to Wells, the source of the information and the sending-officer's motivations would not prevent a reasonable police officer who received the alarming posts from concluding that Plaintiff had violated the peace orders by threatening violence against petitioners.

Plaintiff does not contest that he posted the above-mentioned statements, nor does he contest that the warrant application facially established probable cause; rather, he argues Wells presented a misleading view of the facts because Wells omitted two pieces of information that Wells knew (or should have known) would have made it unreasonable for Wells to seek a warrant. ECF 32-1, at 11. These two omissions were that (1) Officer John Doe allegedly sent Wells the social media posts and Wells was thus acting at the "behest" of Officer John Doe (the "source omission"); and (2) that Plaintiff posted the social media posts on a private social media forum that the peace order petitioners would not have seen (the "audience omission").

The Fourth Circuit faced a similar situation in *Smith v. Reddy*, 101 F.3d 351 (4th Cir. 1996), where it affirmed a district court's determination that qualified immunity applied to a police officer whose application for an arrest warrant included alleged omissions. *Id.* In that case, Smith was identified as a suspect in a shooting outside a nightclub after a woman named Ms. Young identified Smith as the likely perpetrator and herself as the intended victim. *Id.* at 353. Smith argued that Officer Reddy omitted from her application for an arrest warrant that Ms. Young was intoxicated

when she gave Officer Reddy this tip and Smith alleged that Ms. Young's "bad" reputation made Ms. Young less credible. *Id.* at 353, 356. The *Smith* Court noted that "a police officer conducting an investigation is not in a position to make the type of credibility determination that occurs in the repose of the courtroom." *Id.* at 356 (citation omitted). Instead, the Fourth Circuit reasoned that Officer Reddy could have reasonably believed that Ms. Young's reputation and intoxication did not seriously undermine the reliability of her account, because there was corroboration in the form of statements from other witnesses. *Id.* at 356. Such is the case here, too. As to the source omission, even if Wells received a tip from a police officer who Wells knew possessed retaliatory intentions, Wells still could have reasonably believed that that police officer's motivations did not seriously undermine the reliability of the account, because there was corroboration in the form of Plaintiff's own social media posts.[7]

Plaintiff treats the audience omission as if Wells omitted exculpatory evidence. While it is an interesting question as to whether the applicable Maryland statute requires a peace order petitioner to actually receive a threat in order for a violation to occur, "an officer's failure to pursue a potentially exculpatory lead is not sufficient to negate probable cause." *Id.* at 357 (citing

---

[7] Plaintiff appears to allege that Wells' failure to inform the District Court Commissioner that the application for a warrant "was being filed at the request of [Montgomery County Officers]" constitutes a material omission that, if known to the Commissioner, would negate probable cause. ECF 22 ¶ 38. This relies on the standard set forth in *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978), which the Fourth Circuit has declined to apply in the context of qualified immunity claims, instead choosing to examine the objective reasonableness of an officer's conduct. *Smith*, 101 F. 3d at 355. But a *Franks* analysis would still not change the outcome as it requires Plaintiff to allege that the omission was "a material fact" capable of impacting the probable cause analysis. *See Miller v. Prince George's Cnty.*, 475 F.3d 621, 628 (4th Cir. 2007). Even assuming that Montgomery County police officials urged Wells to seek the warrant (and that Wells deliberately omitted this fact from the warrant application), these allegations fail to meet the relatively low standard of materiality. Stated differently, in the face of the concerning statements and videos posted to Plaintiff's social media, there can be no serious claim that the Commissioner's decision to issue the warrant would have been different had they been told of the involvement of the Montgomery County authorities in pursuing the warrant.

*Torchinsky*, 942 F.2d at 264).  Wells could have reasonably believed that the relevant statute does not require that the peace order petitioners receive the threat for a violation to have occurred.  *See* ECF 39, at 4 (advancing this argument).  It is reasonable for an officer to believe that the social media posts were publicly accessible, and that even if shielded from certain viewers, posts could eventually be viewed by the peace order petitioners, or the contents of the posts relayed to the petitioners.  Yet even a mistaken belief as to this fact would not strip Wells of qualified immunity. *Smith*, 101 F.3d at 356 ("[A]n officer is not denied qualified immunity for making a mistake, as long as that mistake is reasonable under the circumstances.").

Plaintiff analogizes this case to *Logan v. Salem Baptist Church of Jenkintown*, Civ. No. 10-0144, 2010 WL 3155261 (E.D. Pa. July 30, 2010).  ECF 32-1, at 15 n.14.  In *Logan*, the plaintiffs alleged that after a contractual deal with the Salem Baptist Church of Jenkintown ("Salem") went awry, Salem members used their political connections to persuade the local district attorney's office to begin a criminal investigation that led to the issuance of an arrest warrant and charges relating to the deal (*i.e.*, deceptive business practices, theft by deception, among others).  *Id.* at *1. The trial court held in an unreported opinion that there was sufficient evidence to support a § 1983 claim because plaintiff alleged material falsehoods in the arrest warrant application.  However, *Logan* did not address omissions from a search warrant application and presented a stronger case for retaliatory, malicious prosecution than is present here since the charges plaintiffs faced there were directly related to the source of the retaliatory motive.  *See id.* at *1 (describing prosecution for deceptive business practices after a business deal fell apart and alleging church members, "in an effort to avoid embarrassment and to avoid resolving their civil dispute [with the plaintiffs] in [arbitration], used their political connections" to launch a damaging criminal investigation).  By contrast, there is nothing facially present to connect a peace order violation against Plaintiff's

neighbors in Calvert County to the protesting activities in Montgomery County. Where the plaintiffs in *Logan* provided a substantial preliminary showing of a material falsehood, Plaintiff here provides nothing more than a conclusory assertion that Wells submitted the affidavit with malicious intent.

The Supreme Court has directed that "qualified immunity questions should be resolved at the earliest possible stage of a litigation." *Anderson v. Creighton,* 483 U.S. 635, 646 n.6 (1987) (citation omitted). This is because qualified immunity is "an immunity from suit rather than a mere defense to liability; . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985). On the facts present at this stage, Wells is immune from suit because it was objectively reasonable to pursue and execute the search and arrest warrants in this case when Wells had substantial reason to believe that Plaintiff had threatened violence against the two peace order petitioners in violation of a peace order. Therefore, Plaintiff's Count I against Wells is dismissed with prejudice.

3.  Plaintiff's § 1983 Claims Against Harvey and Tores.

Plaintiff's complaint did not indicate whether he was suing Harvey and Tores in a personal or official capacity. ECF 2. For the reasons outlined in the Court's December 15th order, the Court construes Harts' complaint as pursuing both official and personal capacity suits. ECF 47.

*i.  Official Capacity Suit Against Harvey and Tores*

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution, and must also show "that the alleged deprivation was committed by a *person* acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (emphasis added). In *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court

16

explained that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."

Plaintiff's official capacity suit against Harvey and Tores must fail because an elected County State's Attorney and his Assistant State Attorneys are State officials, making the State of Maryland the real party in interest.[8] *Edelman v. Jordan*, 415 U.S. 651, 662–65 (1974). When damages would be payable from the state treasury, the state is the real party of interest even though officials are the nominal parties. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (finding no difference in a suit against a state officer in his official capacity and a suit against the state itself.). As such, Plaintiff's official capacity § 1983 claim against Harvey and Tores is best described as an official capacity § 1983 claim raised against the State itself. "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will*, 491 U.S. at 66; *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 617 ("[A] State is not a person against whom a §1983 claim for money damages might be asserted."). Harts' official capacity § 1983 claims against Harvey and Tores are dismissed with prejudice.

---

[8] Harvey asserts Eleventh Amendment immunity. ECF 28-1, at 4. However, the CCSA consented to removal from state court. ECF 1 ⁋ 10. Consistent with *Lapides v. Board of Regents of University System of Georgia*, the State has thus waived Eleventh Amendment immunity in federal court as to state claims up to the amount specified by the Maryland Tort Claims Act. 535 U.S. 613, 624 (2002) (holding that if the State consents to removal, the State cannot assert Eleventh Amendment immunity, even if the entity that consented to removal did not have the authority to waive Eleventh Amendment immunity). There is some disagreement as to the scope of *Lapides'* holding, such as whether litigation conduct waiver extends to federal claims. *See Stroud v. McIntosh*, 722 F.3d 1294, 1300–01 (11th Cir. 2013) (discussing circuit splits over the breadth of *Lapides'* holding). However, the Court need not answer that question, as Plaintiff's Count I against State Defendants is dismissed because the State is not a "person" subject to § 1983 liability for monetary damages.

###### ii.    *Personal Capacity Suit Against Harvey and Tores*

Harts alleges violations of federal constitutional rights and seeks monetary damages against Harvey and Tores in their personal capacities. ECF 22, at 12–21; ECF 47. Harvey and Tores assert absolute prosecutorial immunity. ECF 28-1, at 5–7. Absolute prosecutorial immunity protects "the vigorous and fearless performance of the prosecutor's duty." *Imbler v. Pachtman*, 424 U.S. 409, 427–28 (1976). "The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages." *Id.* at 424–25. Thus, absolute immunity "stems from courts' recognition that 'any lesser degree of immunity could impair the judicial process itself.'" *Nero v. Mosby*, 890 F.3d 106, 118 (4th Cir. 2018) (quoting *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997)). "Because absolute immunity safeguards the process, not the person, it extends only to actions 'intimately associated with the judicial phase of the criminal process.'" *Id.* (quoting *Imbler*, 424 U.S. at 430–31). "All other actions are entitled only to qualified immunity." *Id.* (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

Courts apply a "functional approach" when determining whether the actions of government officials fit within a common-law tradition of absolute prosecutorial immunity, or the more general standard of qualified immunity. *Buckley*, 509 U.S. at 273. The functional approach looks to "the nature of the function performed, not the identity of the actor who performed it." *Forrester v. White*, 484 U.S. 219, 229 (1988). Actions such as evaluating evidence assembled by the police, deciding to seek an arrest warrant, preparing and filing charging documents, participating in a probable cause hearing, and presenting evidence at trial all fall within the "umbrella of absolute immunity." *Nero*, 890 F.3d at 118 (citing *Buckley*, 509 U.S. at 274, *Kalina*, 522 U.S. at 130, *Burns v. Reed*, 500 U.S. 478, 492 (1991), and *Imbler*, 424 U.S. at 431, respectively). By contrast, actions that are "investigative" or conducted in an "administrative capacity" fall outside the protection of

18

absolute immunity. *Id.* Investigative or administrative actions may include giving legal advice to police during an investigation, *Burns*, 500 U.S. at 493, investigating a case before a probable cause determination, *Buckley*, 509 U.S. at 274, and attesting to the truth of statements in a statement of probable cause, *Kalina*, 522 U.S. at 129.

Harts concedes, as he must, that much of Prosecutor Defendants' conduct is subject to absolute immunity and instead argues that two specific actions "do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings" and thus, are not entitled to absolute immunity. *Buckley*, 509 U.S. at 273. These actions are: (1) Harvey and Tores advised the "illegal[]" detention of Harts' property. ECF 32-1, at 19; and (2) Harvey and Tores "screen[ed]" Wells' evidence before Defendant Wells applied for charges. *Id.*

Regarding the first action Harts articulates, nothing in Harts' complaint alleges Prosecutor Defendants advised anyone to illegally detain Harts' personal property. *See* ECF 22. At most, the complaint alleges that *all Defendants* "[c]aused" Plaintiff to be deprived of multiple items of personal property throughout 2020 and into 2021," ECF 22 ⁋ 86.f, though this legal conclusion is not supported by any factual allegations. *See* ECF 22. This conduct as described does not state a plausible claim for relief.[9]

Regarding the second form of conduct Harts describes, Plaintiff only alleges that Prosecutor Defendants "condoned, encouraged, and assisted Defendant Wells and others in

---

[9] Additionally, the retention of property pursuant to a criminal prosecution is of the kind that is "closely associated with the judicial process." *Burns v. Reed*, 500 U.S. 478, 495 (1991); *see also Imbler v. Pachtman*, 424 U.S. 409, 425–30 (1976) (holding state prosecutor had absolute immunity for the initiation and pursuit of a criminal prosecution, including presentation of the state's case at trial); *Morris v. Jackson*, 353 F. Supp. 2d 1199, 1200–01 (M.D. Ala. 2005) (holding prosecutor's retention of defendant's property in preparation for grand jury trial was protected by the doctrine of absolute prosecutorial immunity), *aff'd*, 167 F. App'x 750 (11th Cir. 2006). Therefore, this act is subject to absolute immunity.

seeking and ultimately obtaining [] warrants" along with the conclusory statement that these actions "were made in an investigative role." ECF 22 ¶¶ 65–66. Even if Harts is correct that Prosecutor Defendants' conduct of "condon[ing], encourag[ing], and assist[ing] Defendant Wells and others in seeking and ultimately obtaining [] warrants" is the equivalent of "giving legal advice to the police," which can fall outside the purview of absolute immunity, *see Burns*, 500 U.S. at 495, the complaint as currently pled does not state a plausible claim for relief, as explained next.

Harts pled that "Defendants Harvey and Tores were consulted by Defendant Wells and/or by agents/employees of Defendant MCDP prior to charges being sought against Plaintiff," ECF 22 ¶ 47, and "while acting in an investigative function, authorized, approved, and condoned the filing of fictitious charges against Plaintiff despite knowing that Plaintiff had committed no crime or, in the alternative, with a reckless disregard for the likelihood that Plaintiff had committed no crime." *Id.* ¶ 48. Harts alleges First, Fourth, Fifth, Eighth, and Fourteenth Amendment violations stemming from this conduct.

Harvey argues these averments are no more than conclusory allegations—tantamount to a formulaic recitation of the elements of a claim, ECF 28-1, at 8 (citing *Twombly*, 550 U.S. at 555). The Court agrees. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Iqbal*, 556 U.S. at 678–79. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Harts' allegations against Prosecutor Defendants are devoid of factual detail, and do not allege what Prosecutors Defendants approved, authorized or

condoned. While Harts need not include detailed factual allegations to demonstrate his entitlement

to relief, Harts' current allegations do "not permit the court to infer more than the mere possibility

of misconduct." *Id.* Harts' factual recital has not "nudged [his] claims" of constitutional violations

against Prosecutor Defendants "across the line from conceivable to plausible," *Twombly*, 550 U.S.

at 570.

Finally, Harts' clear attempt at evading the bar of prosecutorial immunity by alleging that

Harvey and Tores were "acting in an investigative function" is not awarded deference. ECF 22 ¶

48. Whether an action is an "investigative function" is a legal conclusion and this Court need not

accept Harts' averment on the matter as true. *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must

accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Furthermore, the complaint provides no details to support this legal conclusion. *See* ECF 22. The

term "investigative function" does not have talismanic properties and cannot save an otherwise

doomed claim.

In sum, the lion's share of Harvey's and Tores' actions are subject to absolute prosecutorial

immunity. The only action that is arguably beyond the purview of that immunity doctrine was the

conduct of "condon[ing], encourag[ing], and assist[ing] Defendant Wells and others in seeking

and ultimately obtaining [] warrants." ECF 22 ¶ 65. However, Harts has failed to sufficiently

plead a claim of a constitutional violation based on these allegations.[10]  Thus, Harts' suit against

---

[10] The Court reiterates that it is likely that the prosecutors are entitled to absolute immunity for the entirety of their alleged actions. Regardless of Plaintiff's description of his claims, the prosecutorial acts he complains of here boil down to the decision to proceed with charges against Plaintiff. The Fourth Circuit has repeatedly affirmed that "[i]t is difficult to imagine conduct more intimately related to the judicial process," and thus subject to absolute immunity, "than a prosecutor's decision to proceed with a prosecution." *Springmen v. Williams*, 122 F.3d 211, 213 (4th Cir. 1997); *see also Nero*, 890 F.3d at 119 (finding that the State's Attorney's "instruction to [an investigating law enforcement officer] to file charges" is subject to absolute immunity "regardless of its motivation." (citation omitted)).

the Prosecutor Defendants in their personal capacities under 42 U.S.C. § 1983 is dismissed with prejudice.

### 4.    Remaining Defendants

As to the remaining Defendants, Calvert County Sheriff, the Calvert County Office of the State's Attorney, and Officer(s) John Doe, the Court concludes that dismissal of Plaintiff's § 1983 claims against the Defendants is warranted.[11]   The Court "lacks subject matter jurisdiction over an obviously frivolous complaint[.]"   *Ross v. Baron*, 493 F. App'x 405, 406 (4th Cir. 2012) (per curiam); *see also Ricketts v. Midwest Nat. Bank*, 874 F.2d 1177, 1180–83 (7th Cir. 1989); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").   In such circumstances, dismissal prior to service of process is permitted.[12]   *Ross v. Baron*, 493 F. App'x at 406 (citing *Ricketts,* 874 F.2d at 1181–83 and *Franklin*

---

[11] Because Plaintiff is "neither a prisoner nor proceeding in forma pauperis, the provisions of 28 U.S.C. §§ 1915(e)(2), 1915A (2006) permitting *sua sponte* dismissal of complaints which fail to state a claim are inapplicable." *Ross v. Baron*, 493 F. App'x 405, 406 (4th Cir. 2012) (per curiam) (citing *Stafford v. United States*, 208 F.3d 1177, 1179 n. 4 (10th Cir. 2000) and *Porter v. Fox*, 99 F.3d 271, 273 n.1 (8th Cir. 1996)). Nevertheless, "frivolous complaints are subject to dismissal pursuant to the inherent authority of the court, even when the filing fee has been paid." *Id.*; *Mallard v. United States Dist. Court*, 490 U.S. 296, 307–08 (1989) ("Section 1915(d) . . . authorizes courts to dismiss a 'frivolous or malicious' action, but there is little doubt they would have the power to do so even in the absence of this statutory provision."); *Fitzgerald v. First E. Seventh St.*, 221 F.3d 362, 364 (2d Cir. 2000).

[12] This is the case as to both Defendants. The Plaintiff is reminded that Federal Rule of Civil Procedure 4(m) requires a plaintiff to serve each defendant with a properly completed summons and a copy of the complaint within 90 days after the complaint is filed. Fed. R. Civ. P. 4(m). When a case is removed to federal court, a plaintiff has 90 days to serve process from the date of removal. *See Brower v. AT&T Mobility Servs., LLC*, Civ. No. RDB-18-2207, 2018 WL 4854168, at *3 (D. Md. Oct. 5, 2018).

This action was removed on December 12, 2022, ECF 1, giving Plaintiff until March 12, 2023, to properly serve the Defendants. As of this writing, Plaintiff is nearly one year past that deadline and Plaintiff has not served Defendant CCS, or the John Doe(s). While Plaintiff provides explanation as to the inability to discover the identity of the John Doe(s) absent discovery, Plaintiff provides no rationale as to the lack of service to CCS. The Court recognizes Rule 4(m) mandates

*v. Or., State Welfare Div.*, 662 F.2d 1337, 1342–43 (9th Cir. 1981)).  A claim may be factually

frivolous, or it may be frivolous when the claim is "without an arguable basis in law." *Ross v.*

*Baron*, 493 F. App'x 405, 506 (4th Cir. 2012).  Furthermore, a finding of frivolity does not dispose

of a claim on the merits.  *See Winslow v. Walters*, 815 F.2d 1114, 1116 (7th Cir.1987); *Indian*

*Creek Monument Sales v. Adkins*, 301 F.Supp.2d 555, 559 (W.D. Va. 2004); *Young v. James*, 168

F.R.D. 24, 27 (E.D. Va. 1996).  It still permits the party to assert the claim in an alternate forum

or proceeding.  *See, e.g., Daigle v. Opelousas Health Care, Inc.*, 774 F.2d 1344, 1348 (5th

Cir.1985).

1.  The Calvert County Sheriff and the Calvert County Office of the State's Attorney

Plaintiff's claims against both the CCA and CCSA are without an arguable basis in law

because neither entity is subject to suit.  Under Federal Rule of Civil Procedure Rule 17(b)

"capacity to sue or be sued shall be determined by the law of the state in which the district court

is held." Under Maryland law, neither the CCA[13] nor the CCSA is a legal entity subject to suit.[14]

*See State v. Rovin*, 246 A.3d 1190, 1196 n.3 (Md. 2021) (holding neither the Wicomico County

State's Attorney's Office nor the Wicomico County Sheriff's Office were legal entities subject to

---

the dismissal of a party either upon a motion or after providing notice to the party of the possibility
of dismissal. Fed. R. Civ. P. 4(m).  The Court has not provided such notice and, therefore, does
not rely upon 4(m) as a basis of dismissal.

[13] Additionally, though the term "Calvert County Sheriff" is arguably ambiguous as it could be
construed as a suit against an entity or an individual, Plaintiff's complaint eliminates any possible
ambiguity.  *See* ECF 2 (Complaint) ¶ 11 (suing the entity Calvert County Sheriff ("CCS") and
describing the entity as "a local agency of the State of Maryland, serving as the primary law
enforcement agency in Calvert County Maryland").  For clarity, the Court will refer to the CCS as
the Calvert County Sheriff's Department.

[14] Defendant Harvey raises the argument that CCSA is not subject to suit in Harvey's memorandum
in support of his motion to dismiss.  ECF 28-1, at 12.  For organizational clarity, the Court
addresses this argument in tandem with Plaintiff's claim against the Calvert County Sheriff's
Department, which the Court addresses *sua sponte* under a frivolity analysis.

suit); *Boyer v. State*, 594 A.2d 121, 128 n.9 (1991) (holding the "'Sheriff's Department' is not an entity capable of being sued"); *Owens*, 767 F.3d at 395 ("To remain faithful to the court's analysis in *Boyer*, we must similarly hold that the 'Baltimore City State's Attorney's Office' is not a suable entity.") (citing *Boyer*, 594 A. 2d at 128 n.9); *Coster v. Maryland*, Civ. No. GLR-21-65, 2021 WL 5605027, at *11 (D. Md. Nov. 30, 2021) ("As Defendants correctly argue, Maryland courts have long recognized that a county sheriff's office is not a legal entity capable of being sued."). Therefore, this Court lacks jurisdiction over Plaintiff's § 1983 claims against CCS and CCSA, as there is no arguable basis under Maryland law supporting suit against these entities. Count I is dismissed with prejudice against CCS and CCSA.[15]

## 2. John Doe(s)

Finally, the only remaining Defendants include one or more unidentified law enforcement officers for Montgomery County, Maryland. ECF 22 ¶ 17. The Court finds Plaintiff's § 1983 claim against the unnamed Defendant is frivolous because Plaintiff's theory of liability has no basis in the law. Ultimately, Plaintiff's theory of Officer(s) John Doe's liability is entirely speculative and conclusory, and based on no more than Plaintiff's assumption that someone brought Plaintiff's undisputedly accurate social media posts to the attention of a Calvert County

---

[15] Dismissal with prejudice on the basis of a lack of subject matter jurisdiction is strongly disfavored. *See Univ. of Pittsburgh v. Varian Med. Sys., Inc.*, 569 F.3d 1328, 1333 (Fed. Cir. 2009) ("[T]he law universally disfavors dismissing an action with prejudice based on lack of standing, and there is a strong presumption that such a dismissal is improper."); *Kimberly-Clark Worldwide Inc. v. First Quality Baby Prod. LLC*, Civ. No. 14-1466, 2017 WL 481434, at *2 (E.D. Wis. Jan. 17, 2017) ("Generally, a dismissal for lack of subject matter jurisdiction is without prejudice"). "On occasion, however, a dismissal with prejudice is appropriate, especially where it is plainly unlikely that the plaintiff will be able to cure the standing problem." *Univ. of Pittsburgh*, 569 F.3d at 1333 (citing *Fieldturf, Inc. v. Sw. Recreational Indus., Inc.*, 357 F.3d 1266, 1269 (Fed. Cir. 2004)); *Kimberly-Clark Worldwide Inc.*, 2017 WL 481434, at *2. This is one of those rare circumstances. Maryland law has consistently supported, and Maryland courts have consistently held, that entities like the CCS and CCSA are not subject to suit and any subsequently filed suit against these entities would plainly be futile.

law enforcement officer. And even if true, there is no arguable basis in the law that such an action violates any federal constitutional amendment.

At most, Plaintiff's Amended Complaint speculates that there is an actor within the Montgomery County Police Department with nefarious intent who reviewed Plaintiff's publicly available social media postings. Even if true, this is not a search and would not implicate the Fourth Amendment, as there is no reasonable expectation of privacy in a social media post that is not made private. *See, e.g.*, *United States v. Meregildo*, 883 F. Supp. 2d 523, 525 (S.D.N.Y. 2012) ("When a social media user disseminates his postings and information to the public, they are not protected by the Fourth Amendment."). *Cf id.* at 256 ("Where Facebook privacy settings allow viewership of postings by "friends," the Government may access them through a cooperating witness who is a "friend" without violating the Fourth Amendment."). Plaintiff provides no theory as to how John Doe's "search" was "illegal" and does not assert, for instance, that John Doe officers conducted a warrantless search of Plaintiff's private social media posts.

Rather it appears Plaintiff's theory of the case is that Officer(s) John Doe noticed Plaintiff because of his protest activities, did not like the Plaintiff because of the same, and decided to look at Plaintiff's publicly available social media posts and court record. *See* ECF 22 ⁋ 29–30 (alleging John Doe "initiated an unjustified and illegal investigation" and uncovered Plaintiff's Final Peace Orders and Plaintiff's social media posts); *Id.* ⁋ 31 (asserting John Doe Defendant(s) then "forwarded this information" to the Calvert County Sheriffs). Accepting that as true, the Court still concludes the § 1983 claim against John Doe is frivolous as there is no basis in the law supporting the theory that such conduct constitutes a Constitutional violation. Put another way, it is not arguable that an officer's conduct of looking at publicly available social media posts violates the law or Constitution of the United States. Nor is it arguable that an officer's conduct of

25

forwarding objectively concerning threats of violence to an officer of appropriate jurisdiction is somehow a violation of the law. Therefore, the Court will dismiss Count I against Officer(s) John Doe. This dismissal is without prejudice and thus leaves open the seemingly remote possibility that Plaintiff may assert a non-frivolous theory of liability against Officer(s) John Doe.

However, the Court notes that the assertion of a non-frivolous theory of liability appears unlikely since Plaintiff's allegations—even after exercising his right to amend the complaint—fail to amount to more than a bald accusation that unknown officers may have harbored ill will toward Plaintiff and may have forwarded accurate information to another law enforcement agency. To be clear, Plaintiff alleges a set of facts including his arrest at gunpoint for charges that were ultimately dismissed. The Court does not mean to minimize the impact such a series of events may have had on Plaintiff. However, the claims against the John Doe officers from Montgomery County rest on "[m]ere 'naked assertions of wrongdoing' [and are] generally insufficient to state a claim for relief." *Mendygral v. Mayor and City Counsel of Ocean City, et al.*, Civ. No. ELH-21-1381, 2022 WL 125275, at *12 (D. Md. Jan. 13, 2022) (quoting *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009)). And as to the argument that Plaintiff needs additional discovery to expand on his claims,[16] Plaintiff essentially contends "that he 'should be allowed to *find out if* [he] has a claim, rather than that [he] *has a claim* for which [he] needs . . . discovery.'" *McKinnon v. Blank*, Civ. No. 12-1265, 2013 WL 781617, at *11 (D. Md. Feb. 28, 2013) (emphasis added) (quoting *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994)). Stated differently, as it

---

[16] Since Plaintiff never served the John Doe officers, no motion to dismiss has been filed on their behalf. However, Plaintiff nonetheless argues that he "should be afforded opportunity through discovery to identify, and amend to include, the John Doe Defendants." *See* ECF 32-1, at 9. The Court notes that it is not merely the identity of the John Does that is lacking as the Amended Complaint's allegation of facts "do not permit the court to infer more than the mere possibility of misconduct" on their behalf, and thus Plaintiff fails to show that he is "entitled to relief." *Iqbal*, 556 U.S. at 679 (citing Fed. Rule Civ. Proc. 8(a)(2)).

relates to John Doe(s), Plaintiff has had two attempts at fashioning a complaint and continues to allege "an unadorned, the-defendant-unlawfully-harmed-me accusation" of the kind that does not state a plausible claim for relief. *Iqbal*, 556 U.S. at 678 (citations omitted). More is required.

## B.    The Court Declines to Exercise Supplemental Jurisdiction over Plaintiff's State Law Claims

All that remains in Harts' suit are state law claims against all Defendants. The removal statute provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." *See* 28 U.S.C.A. § 1447(c); *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."). The Fourth Circuit interprets this language not as an absolute mandate, but "as a preference for remand when all federal claims drop out of a properly removed case." *Payman v. Lee Cnty. Cmty. Hosp.*, 338 F. Supp. 2d 679, 682 (W.D. Va. 2004) (citing *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 196 (4th Cir. 2002)). "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). When deciding whether to remand a case after the federal questions have been dismissed, the court should consider "'principles of economy, convenience, fairness, and comity' and whether the efforts of a party in seeking remand amount to a 'manipulative tactic.'" *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 617 (4th Cir. 2001) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988)).

In this case, removal to federal court was proper, and remand falls within the Court's discretion under the supplemental jurisdiction statute, 28 U.S.C.A. § 1367(c), keeping in mind the Fourth Circuit's preference for remand. *See Hinson*, 239 F.3d at 617–18; *Payman*, 338 F. Supp.

27

2d at 682.   Considerations of economy, convenience, fairness, and comity weigh in favor of remanding the case.  Therefore, the court exercises its discretion pursuant to 28 U.S.C. § 1367(c)(3) to decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

## IV.   CONCLUSION

For the reasons indicated above, Montgomery's County's Motion, Wells' Motion, and Harvey's Motion are **GRANTED** in part as to Plaintiff's federal claims.  Harts' Count I against Defendants CCSA, CSA, and John Doe(s) is **DISMISSED**.  The case is **REMANDED** to the Circuit Court for Calvert County for the remaining state law claims.

Dated: <u>March 5, 2024</u>

Brendan A. Hurson
United States District Judge

28